AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

United States Gouts
Southern District of Texas
FILED
SEP 28 2018
David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| LEATRICE MALIKA DE BRUHL-DANIELS (45)<br>Mitchellville, MD | ) ) ) ) ) | Case No. H18-1521M |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 1, 2016 and Sept. 12, 2018,__ in the county of __Harris__ in the
__Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1512(c)(2) | Attempting to obstruct, influence, or impede any official proceeding. |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jennifer S. Whitehurst, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09/28/2018

_____
*Judge's signature*

City and state: Houston, Texas

Peter Bray, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jennifer S. Whitehurst, being first duly sworn, hereby depose and state as follows:

## AGENT BACKGROUND

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed since December 2004. I am currently assigned to the Houston Field Office in Houston, Texas. I have received training in the preparation, presentation, and service of criminal complaints and arrest and search warrants, and have been involved in the investigation of numerous types of offenses against the United States.

## PURPOSE OF THE AFFIDAVIT

2. I make this affidavit in support of an application for a complaint and arrest warrant for Leatrice Malika De Bruhl-Daniels ("De Bruhl"), 45, a resident of Mitchellville, Maryland. De Bruhl, a U.S. citizen and Special Agent with the Naval Criminal Investigative Service ("NCIS"), obstructed justice by providing sensitive information to a target of a federal criminal investigation being conducted out of Houston, Texas.

## CRIMINAL OFFENSE ALLEGED

3. Between on or about June 1, 2016, and on or about September 12, 2018, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, LEATRICE MALIKA DE BRUHL-DANIELS did corruptly attempt to obstruct, influence, and impede an official proceeding in the Southern District of Texas, in violation of Title 18, United States Code, Section 1512(c)(2).

## EVIDENCE SUPPORTING CRIMINAL OFFENSE ALLEGED

4. De Bruhl has been an NCIS Special Agent for approximately the last nine years, and before that time she was an investigative specialist with the Federal Bureau of Investigation

(FBI). NCIS assigned De Bruhl to Dubai, United Arab Emirates (U.A.E.) in 2015, where she was stationed at the United States Consulate. She remained at that post until she was reassigned to Hawaii in April 2018.

5. As an NCIS Special Agent, De Bruhl's duties did include investigating a variety of federal criminal violations, including those related to terrorism. In Dubai, she became the Port Visit Support ("PVS") liaison to the port of Jebel Ali, Dubai, U.A.E. As the PVS, she handled all felony criminal investigations, counterterrorism, and counterintelligence matters dealing with transiting Navy vessels. She also trained active duty U.S. Navy sailors and marines and other Defense Department civilian personnel on operational security matters, including trainings on counterintelligence, counterterrorism and criminal threats. As an NCIS Special Agent, De Bruhl had a top secret-sensitive compartmented information (TS-SCI) security clearance. This clearance is now suspended, but she actively had it during her entire time in Dubai. During her time in NCIS and FBI, De Bruhl attended numerous trainings on how and why certain information is classified, how to handle, store, dispose, divulge and otherwise disseminate classified information. She also had signed a nondisclosure agreement (NDA) regarding any classified information she may learn of as part of her duties, and this NDA was in effect during her entire time in Dubai and remains in effect.

6. While in Dubai in June 2016, a friend introduced De Bruhl to an individual named Nadal Diya, a Syrian national living in Dubai. Diya told her he was seeking assistance with procuring a visa to the United States, and wanting to find out why the U.S. State Department would not renew his tourist visa after his last trip to the United States in the summer of 2014. De Bruhl began immediately looking into the issue, and discovered that Homeland Security Investigations ("HSI") had an interest in Diya. She communicated with an HSI agent in Dubai, who in turn sent

an email on June 6, 2016, to an HSI agent in Houston, Texas inquiring about the matter. The Houston agent had an active investigation there into Diya regarding his possible involvement in the shipment of goods from the United States to Iran in violation of United States export laws.

7. The Dubai agent copied De Bruhl on the email and explained to the Houston agent that De Bruhl "has some interest in your target, albeit from a different angle." The Houston agent and De Bruhl then exchanged emails about the matter, and the Houston agent told her Diya was one of the targets of his federal criminal investigation.

8. In mid-February 2017, De Bruhl asked State Department staff at the Dubai Consulate why Diya was unable to get a visa to travel to the United States. A staffer told her via email that Diya "and his entire family flag red IACTs (Inter Agency Counter Terrorism) ...Furthermore, DHS has indicated adverse information on him relating to both INA 212 3(b) (terrorism-related) and 6C1 (misrepresentation)..."

9. Later, on February 22, 2017, De Bruhl reached out to the Houston HSI agent for additional information on Diya. She asked over a classified email system if the Houston agent was "still working the case" involving Diya. She then explained that he provided her information about his business, but before her agency went any further, she wanted to know the Houston agent was still interested in Diya, and that she "can definitely share some information" with him, and that she hoped the Houston agent "can shed some light to assist me with further contact with him." The Houston agent replied, "[w]e are still interested in Diya; however, the AUSA has stalled in prosecution for now until the [the FBI] declassified items the AUSA deems are discoverable. . . ." This statement informed De Bruhl the criminal investigation into Diya involved classified information and that there was an impending federal prosecution of Diya.

10. The Houston agent ended the email by suggesting the parties get on a secure video telephone conference ("SVTC") to discuss the issues, which would also allow them to discuss classified information. De Bruhl responded by explaining a "SVTC would be great since I have so many questions." A SVTC took place on March 9, 2017. This SVTC was between the Houston agent and a special agent from the Department of Commerce, both in Houston, and De Bruhl in Dubai.

11. During the SVTC, De Bruhl explained that she was aware that there was an HSI and FBI investigation into Diya, but claimed ignorance as to any details about either investigations. Agents did not provide De Bruhl with any details about the HSI/Commerce investigation, and advised De Bruhl to, "Stay away from Diya because he is a target of an ongoing investigation."

12. After De Bruhl got to know Diya, and unbeknownst to any of the federal agents investigating Diya, she entered into a personal relationship with Diya that ultimately became a romantic one.

13. On or about March 29, 2017, Diya threw De Bruhl an extravagant birthday party at his Dubai residence, according to several witnesses. In attendance at the party were employees of NCIS and the State Department, active duty Navy personnel, and U.S. government contract personnel, as well as personal friends of De Bruhl who traveled to Dubai from the United States. Witnesses estimate the cost of the party, which was fully catered with a D.J., lighting, decorations, and a custom birthday cake, was "tens of thousands" of dollars.

14. A few weeks after that birthday party, in early May 2017, De Bruhl approached the FBI Assistant Legal Attaché (ALAT) in Dubai, to determine whether Diya would make a viable human intelligence source for the U.S. Government. She gave details about Diya, his business, and his source potential, but did not mention that she knew Diya was the subject of HSI and/or

FBI investigations. Later, after searching Diya's name, the ALAT discovered that there was an ongoing FBI counterterrorism investigation into Diya being run out of Houston.

15. The ALAT informed De Bruhl in late May 2017 of the counterterrorism investigation, and warned her to keep her distance from Diya. He also instructed her not to share any new information with Diya unless otherwise instructed by the FBI and Department of Homeland Security case agents. He also stated that he would set up a meeting with the FBI case agent from Houston.

16. On June 27, 2017, De Bruhl emailed herself an email entitled "Thoughts to ND," which appear to be proclamations of love for Diya. She wrote the following:

> "Got something to get off my chest. I'm sure I should say this in person but I see you and smell your cologne I will be hesitant to say it. My feelings are confusing me. I can't stop thinking about of [sic] you. I have not slept in days . . . I'm deeply attracted to you and I can't think about you like that. It's not right. I'm not quite sure how you really feel about me but it's bad for me. Why is this bad? You're not mine and I will never have you like I want. I'm also afraid of getting hurt. Don't worry I will still fight for your visa situation as much as I can I ultimately want the best for you and pray those investigators see you like I do. We can stay FRIENDS but I have to bring my wall back up so I won't get hurt. Thank you for being so kind to me."

She ended the email to herself discussing her upcoming vacation to Greece and how she dreamt that Target would meet her in Greece and they would have "the best time ever."

17. About two weeks later, on July 12, 2017, De Bruhl, from the FBI's secure area in the Dubai Consulate, took part in a secure call classified at the SECRET level with me in Houston, Texas. While on that call, I informed De Bruhl that the Assistant United States Attorney assigned to Diya's investigation requested documentation detailing the chain of events between De Bruhl and Diya. De Bruhl stated she would discuss the matter with her supervisor and subsequently would provide the requested information. Also, during this call, I informed De Bruhl that Diya was the target of an FBI counterterrorism investigation along with another subject.

18. After this conversation, maybe the same night as the conversation, De Bruhl met Diya at his residence in Dubai and had sexual relations with him. She also told him that he was the target of an FBI investigation, and that if it's the FBI, it's either counterterrorism or counterintelligence. She also told him that if he traveled to the United States he would be arrested. Then from July 16-24, 2017, she went to Greece on vacation, paid for, in part, by Diya, who gave her $1,400.

19. On July 24, 2017, De Bruhl saved notes of a conversation and/or text message she had with Diya into her iPod. It's not clear when this conversation took place, but it was after her call with me, and appears to be around the time she revealed to Diya that he was the target of an FBI counterterrorism investigation. The notes start with the premise that "[i]t's poss ur phones are being monitored." She then wrote that she sent "that text," a text she would later explain to agents was sent to Diya claiming they were simply friends, in case someone was monitoring her texts, or in case someone suspects she is "acting as some sort of dbl agent." After that opening, De Bruhl told Diya the following:

> "Due to the line of questioning they asked, u hv some issues ahead. I'm sure u haven't told me a lot which is fine. Ur prob trying to protect me or just hold out on details u only want me to tell me. Either way I'm going to protect me. U hv some associates that are well known to them which hv potentially placed u on the Feds radar. If u hv been honest with whatever u've told me than I recommend u get together any docs u can to clear ur name and ur busn in the states. Whatever they hv on u is more than just suspicion so it's serious. Recommend u get a lawyer when they call u for a meet at the EMB or Consulate. That should be the next step, a meeting but I'm not sure when. Be honest! They know stuff and if u lie u may never see American soil again! Unless they need to recap with addl questions from me, I think my part to push ur process is done. I gave them no more than what I could to emphasize your innocence. Again if u lied to me than its going to be revealed later. I don't want to think u hv lied to me since I put my neck out there for u. I believe u and I want to stay ur friend so whatever u got urself into than keep me out of it."

As part of this investigation into her, De Bruhl revealed the existence of this note after she was interviewed by NCIS agents in May 2018. She made the following statement when telling them

about the note: "I noticed a note I saved to my phone that I would have probably told Diya. This is NOT good. I didn't remember sending this or telling him this but this is pretty damn bad."

20. On December 18, 2017, an AUSA from Houston, two Houston HSI agents, a Commerce agent and I were scheduled to interview De Bruhl at the Dubai Consulate about her interactions with Diya. And on the next day, December 19, 2017, we had scheduled an interview with Diya under the ruse that they were there to collect information to assist with his visa.

21. During her interview, De Bruhl failed to disclose her sexual relationship with Diya, the fact that he had given her money and other things of value and had thrown her the previously-mentioned birthday party even though agents asked for all details regarding their interactions. She also failed to mention to investigators that she had told Diya that he was the target of several law enforcement investigations, including a counterterrorism investigation, and she failed to disclose that she warned him that he would be arrested if he came to the United States. She also failed to disclose that her son would be working for Diya in the coming days, which was something she had also been previously discussing with Diya for several weeks.

22. Agents did not know De Bruhl had a personal and sexual relationship with Diya at the time of this interview. After De Bruhl left the Dubai Consulate that night, she met with Diya at his home and prepped him for his meeting the next day with the HSI and Commerce agents.

23. In his interview on December 19, 2017, Diya denied utilizing anyone in the Consulate to gather information or help him with his visa application. He did not mention De Bruhl's name, or knowing De Bruhl during the interview. A couple of weeks later, De Bruhl's son began working for his company until he left that employment in March 2018 after receiving about $3,000 in pay.

24. In late April 2018, the Navy moved De Bruhl from Dubai to Hawaii for her next assignment. This assignment was to be part of a personal security detail for a high-ranking Navy official in Pacific Command based in Hawaii. Shortly after she arrived, however, her assignment was canceled and the reason she was given was for issues with her security clearance. On May 1, 2018, De Bruhl contacted a senior NCIS official asking for more details as to why her assignment was being canceled and to inquire about her security clearance issues.

25. During this conversation with this NCIS official De Bruhl initially denied any wrongdoing, but over the course of the conversation, she admitted that she had an intimate sexual encounter with Diya. She also admitted she had borrowed money from Diya for travel, which she claimed she had later repaid. De Bruhl further revealed that she had allowed her 23-year-old son to visit and work in the U.A.E. for Diya while she was there. And ultimately, De Bruhl admitted that she "had been in contact with the foreign individual via text message since arriving in Hawaii."

26. Over a series of non-custodial interviews conducted by NCIS in Hawaii and then later in Virginia, De Bruhl made the following admissions in early May 2018:

   a. De Bruhl stated Diya paid for her birthday party and several dinners;

   b. De Bruhl admitted to having a relationship with Diya that involved at least one sexual encounter;

   c. Diya gave De Bruhl the equivalent of $1,400.00 which she claimed she later paid back in alcohol;

   d. De Bruhl's son worked for Diya for a two-month period and was paid approximately $3,000;

   e. De Bruhl believes she did inform Diya that he was the subject of an FBI counterterrorism investigation, and the name of another target of that investigation;

   f. De Bruhl told Diya that his phones were likely being monitored;

   g. The night of the December 18, 2017 meeting with Houston law enforcement personnel, and the night before Diya met with HSI Houston and Commerce agents in Dubai, De Bruhl admitted to coaching Diya for his interview the next day;

h. De Bruhl informed Diya that if he came to the United States he could be arrested;

i. Upon her departure from Dubai to Hawaii, Diya gave her a gold Pandora bracelet and paid for her to get a massage prior to her departure from Dubai. De Bruhl stated she sent the bracelet back to Diya as well as the money for the massage after arriving in Hawaii; and

j. De Bruhl repeatedly stated that her intention was to help the investigative agencies build a case on Diya but it got personal and she made some mistakes.

## CONCLUSION

27. Based on the foregoing, which I affirm is true and correct to the best of my knowledge and belief, I respectfully submit that probable cause exists to support that Leatrice Malika De Bruhl-Daniels has committed the offense of corruptly attempting to obstruct, influence, and impede an official proceeding, in violation of Title 18, United States Code, Section 1512(c)(2), as detailed above.

_____
Jennifer S. Whitehurst
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 28th day of September 2018, and I find probable cause supporting the criminal offense alleged in this affidavit.

_____
Peter Bray
United States Magistrate Judge
Southern District of Texas